Good morning. I'm William Davis. I'm here for the various parties referred to as the Silver Sage Partnership and also for Edward Moore et al. And I'll collectively refer to them as Silver Sage. I'd like also to reserve five minutes for rebuttal. And I'd also like to start off by thanking the Court for hearing these matters on an expedited basis. So my clients and I appreciate that. We know the Court has many other pressing matters, and we appreciate the matter being heard on shortened time. The central question, I think, after reviewing all the briefing, still remains what it was for me, what it was when I first started the briefing, which is really, is this a proper use of the bankruptcy statutes? Is this something the city may do, given the strictures of state law and given the fact that federal bankruptcy law requires that all state law strictures be met? What you have here, factually, is after the circuit reinstated the verdict in 1994. I'm sorry, the 1994 verdict was reinstated in 2001. After that happened, apparently by the city's own admission, there was about six months' worth of bankruptcy planning, apparently, during the rehearing period that was utilized to try and apparently figure out whether a bankruptcy would help the city get out of paying the judgment. So what occurred then was, after rehearing was denied, some brief communications back and forth between the parties, culminating with a letter from me offering a standstill agreement, and then ultimately no response to that, and then the city filing Chapter 9 bankruptcy. The various statements that are in the record that I think are, are unconverted statements indicate that at the time that the city filed the bankruptcy, it was, in fact, solvent. It, in fact, had a capital surplus, which it openly bragged about publicly. It also indicated that the purpose of the bankruptcy was to get out of paying the Silver Sage judgment from this court. They contended they would pay 10 or 20 cents on the dollar. That's a bad faith issue, isn't it? Are you saying that they, that they had, there was no purpose whatsoever for filing the bankruptcy? There was no purpose in trying to organize the payment of their debts? That it was strictly a scam, a bad faith just to prevent you from getting any money? Yes. And that's the record, the evidence in the record. Well, I don't think we bear that burden in terms of showing that they were in bad faith. The Henry Sullivan case, I think, is fairly plain that failure to meet the statutory requirements and so forth is, in fact, a need and find a nefarious motive. I do think that here there's a lot of evidence sort of suggestive of that. There's a desire to relitigate, a desire to get a forum shop into a forum and into a discussion level in terms of whether they could pay or not pay, what was convenient to pay, what was inconvenient to pay, and so forth. So our position really is both, that they didn't meet the 921 factors. They also didn't meet the 109C factors in terms of qualifying to be a Chapter 9 debtor. But the overriding purpose, really, of the bankruptcy was to get out of paying the Silver State's judgment and to obey the supervision of the district court in terms of injunction or remedial measures. If one looks at the statutes of California, the California is quite explicit that final judgments must be paid by the cities. Quite specific. California government code, I believe, is 970.2. So you're saying that there's no purpose whatsoever for filing bankruptcy in this case. There's no legitimate purpose on the part of the city for filing bankruptcy in this case. You should pay your money, and there's no purpose that could be served whatsoever in the bankruptcy. Well, since this was essentially a single creditor case, yes, I think that's right on these facts. I don't know, again, that that's our burden, but I believe that the evidence has suggested that that is the problem that I have with the whole thing, really, in terms of the purposes. If you're going to get out from under that state statute sometimes in many bankruptcies, people try and do that. I guess that's what I'm getting at is that you're saying somewhat that the state statute trumps the bankruptcy law and there's no way that you can file bankruptcy to avoid that state law requirement. In Chapter 9, that is correct. In Chapter 9. Yeah. That is our position, because if one looks at Beacons, which upheld Chapter 9 after the previous version of Chapter 9 was struck down in Ashton, one sees that the entire reason that it was held to be constitutional was because all state laws had to be met. Congress had put in 903 and 904, which prohibited the Bankruptcy Court from appointing trustees or interfering in any way with the finances of the city. The cities are run by the states. That was the problem. And in current bankruptcy law, that's what happens. So if you have a bankruptcy whose avowed and stated and admitted purpose is to go to a bankruptcy court as a city to evade state law or not comply with state law or to get a better deal than you would get under state law, that is, I believe, an improper purpose. It is not, as Marsh says, I think, consonant with a proper bankruptcy purpose. Now, I take it you're the source of your statement about the city's purpose was to not pay the judgment was a statement made by the mayor. Yes. That's correct. I mean, among other things. Yes. Does the record show what his occupation is? Is he a bankruptcy lawyer? Does he know what he's talking about when it comes to municipal bankruptcies? I don't know if the record reflects what his private employment is. He apparently does have bankruptcy experience. That's been a public record that he he has personally gone bankrupt, apparently. Yes. Bankruptcy experience to that chapter. But a person, the person who has done a personal private bankruptcy, and that's the only experience they have may think that taking the city into bankruptcy would result in the same thing that a private bankruptcy. In other words, does that really show bad faith? It might show ignorance on the part of the mayor about a very technical part of the practice of law. When I was in law practice, I always used to take somebody along who knew what the numbers were because I didn't know. I did other kinds of work, but I don't know that that really shows bad faith. Well, to be fair about it, it's possible he was misguided or thought it was a seven and could just simply wipe out debt. Perhaps he did understand that the problem with assuming that from this record is that the city itself is quite plain that they spent six months planning the bankruptcy. And I believe they actually say that they hired some of the finest minds in California that know about bankruptcy and so forth. Well, why not? Getting ready to levy on there? Excuse me. Oh, no, go ahead. Weren't they getting ready to execute on their judgment? Wasn't I getting ready to do that? No. In fact, we had actually offered a standstill agreement. Preparatory to a status conference is actually what we did. Well, whatever. There was no standstill agreement. No, there certainly wasn't. And you were threatening to execute on the judgment, weren't you? No. Are you sure? Yes, quite. What happened, let me clarify. We had executed, I believe, in 1995. After receiving no response to multiple letters, there was no stay in place, there was no attempt to contact us. They took the view that because state law meant that they didn't have to pay anything until the judgment was final, that therefore that was true for federal judgment as well. And at that point we did execute the district judge. And didn't you send a letter saying if you don't agree to whatever it is, we'll go ahead and execute on the judgment? I think we invoked that we would pursue process. That's what I just said. I mean, you threatened to execute on the judgment. And that's what triggered them to file their Chapter 9, right? Well, the reason I mentioned some of the history of it, Judge, is that our position was that after the incident in 1995, the district judge made it clear to me that she wanted me to proceed by notice motion. So we would have done it by notice motion if the city had continued to resist. But part of the standstill agreement was that we had a status conference by then. I believe it was set for 7 January. And we offered them a standstill agreement, which really required them to do nothing more than acknowledge that they did have an obligation, they were going to have to pay, and to meet with us and try and figure out ways to pay it, to explore satisfying it and so forth. And then ultimately, I think the other thing we asked them for was that they not transfer a great deal of money around or make it just, you know, take actual evidence. And what did you tell them you would do if they didn't agree to this? I don't know that I made a specific request. Doesn't your letter say you'll go ahead and execute on the judgment? Well, there were several letters. I think there were – I think the initial one did say something like that. But the last letter, I believe, was the standstill agreement. But there was never a response to that at all of any kind. In fact, they filed bankruptcy, I think, five or six days later. You know what? When I'm having trouble, maybe you can help me with this. If this was the commercial world, a corporation filing bankruptcy is due course, and if lawyers don't do it, they're probably subject to malpractice. Now, why is this different for a city faced with a certain situation saying, well, let's seek advice, number one, about filing Chapter 9 and then doing it? Am I to hear you saying it implied that the mere fact that a city does that, regardless of your negotiations, they have no right to, number one, and if they do, something bad happens? I don't quite understand what's going on here in your argument, the fact that the city can file 9, did file 9, all of a sudden is this tragedy that is more than what they may go beyond bad faith or what they may be able to do or what the state law may do. There's almost something like it's per se, you can't do that. Am I hearing you right? Yeah, I mean, in terms of the purpose, yes, I think that's correct, because the purpose was to not comply with state law. But did they not comply with state law? Oh, there's no way they've complied with state law. Well, will the bankruptcy result in the fact that they won't comply with state law or is that still yet to be determined? Well, I think it's still yet to be determined. Okay, so then how can we say now that their filing and seeking advice on 9 was something of a wrongful purpose? If it complies with state law, you're saying they still can't use Chapter 9? They can't use Chapter 9 for the avowed purpose that they've said they're going there for. We don't know what the purpose is because you have said we still have to determine whether they can comply with state law. Isn't that right? No. Their purpose, they've been quite plain about their purpose. Their purpose was to pay $0.10 or $0.20 on the dollar, and they've adhered to that purpose. They've offered several plans which offered less than that. That has been consistent with their purpose throughout, was to simply evade paying this judgment and to simply evade the district court's reach in terms of addressing their finances and addressing their remedial civil rights matters that may be necessary. Well, then you're saying it has been decided in the bankruptcy that their plan of reorganization, if you will, does violate state law. That's been decided. There has not been a formal ruling. Technically, the – I'm sorry to take that back. There actually was one ruling to that effect, that state law would have to be complied within the plan that is a plan requirement. But apart from that, I think it's a requirement anyway because the question is, really, who runs the states? Can a bankruptcy judge run the states? But is – taking a Chapter 11 status, until you get to a plan that has been approved or not approved, how do you know that it violates state law? Well, in a Chapter 11, you know, they may violate state law. I know, but in Chapter 9, has there been a plan approved in this case yet? No. Okay. Until you have a plan, how do we know it violates state law? Because the city has said that its purpose violates state law. Suppose the bankruptcy judge, though it doesn't let them implement that purpose, requires that they pay you 100 cents on the dollar, but gives them time to do that. Would that violate state law? Yes, because the bankruptcy judge is powerless, really, to allow them to evade state law, and yet that's precisely what the purpose of the bankruptcy is. They can't read state laws that the judgment has to be paid immediately. In other words, you sell the fire trucks, you sell the police cars, you sell everything you have to in the city to pay the judgment, and the bankruptcy court is powerless to do anything about that, to stage that payment over a year or two or whatever it takes. Well, the reason that I suggest that it's an improper purpose to go there is because state law already has a payment plan already set up. I mean, it's actually already there. So in California, in your view, a municipality faced with a court money judgment may not file Chapter 9. Is that the way you read it? In California, for the purposes of getting out of the judgment, if that's their only problem, I think that is a very big problem. But didn't the court find there was no bad faith in this case? Yes, they did. So what do we do with that finding? Is it clearly erroneous? Is that our standard? No, your standard would be de novo on that. There are no actual factual disputes that I'm aware of. Number one and number two, legal questions from the bankruptcy court would be reviewed de novo. But, frankly, I found that the bankruptcy judge's conclusions on that to be somewhat inexplicable. They were rather much more like what one would expect to see in an 11, where sometimes people come in on an emergency basis, as I understand it, and they don't have all their schedules together. They don't have all their information and so forth. But the 109C requirements are quite specific. They're supposed to be lengthy and full asset disclosure and so forth discussions before they ever file. They have to file and meet a specific solvency test. And the Bridgeport case is plain as well, that merely if the city is having financial problems, that's not really good enough. They have to be insolvent within the meaning of the statute. Well, wasn't the city insolvent if you add the judgment to their balance sheet? No, in fact, they were not. They had a surplus even with that judgment on the book? No. They were claiming at the time that they filed with six-month-old financials that were unauthenticated and so forth and had no assets in them and so forth because allegedly there's no records of the assets. Their contention was, is that they couldn't pay the full judgment in full that year, but State law provided for them to pay it with bonds or whatever, clear out to 30 years. But there's no way to really answer that question because they simply didn't provide any information about their assets, for instance. In cash flow, which is the relevant test, as I understand it, they were, in fact, solvent. That's what their own admissions show, and that's actually what their own financials show too, a $750,000 surplus. How do you add the judgment into a cash flow analysis? In other words, they're paying their people, they're paying their debts as they come due, and then you add $3 million, bang, right on top of it. There's no payment schedule built into that judgment. So how does a cash flow analysis of insolvency help you at that point? Well, the payment schedule is, in fact, built into the statute because it exceeds a certain dollar figure. I've forgotten precisely what it is. But it's not built into the judgment. In other words, the city is sitting there paying its bills, and all of a sudden the $3 million judgment gets dropped into the mix. How does it know the state of insolvency if that's all it knows at that point? Well, it's still supposed to have financials, it's still supposed to have records of its assets, and it's still before it's allowed to go into Chapter 9. It's still supposed to prove its insolvency under the cash flow test, which it did not do. You know, I've got a problem right now because I've listened to you all this time. It sounds like you're arguing the motion to dismiss. I just checked. The only thing before us is a question of the lift stay, the relief from stay, either partial or total. The judge said we're going to relieve you from the stay, the automatic stay, so that you can go out and liquidate on the civil side your debt. The judge said we're not going to give you relief from stay relative to the rest of the bankruptcy in adjusting the debt. Now, it sounds to me like you're arguing dismissal. You're saying this thing is all bogus. We got over here in the state a way to pay it. We got over here this bad pay. You're arguing dismissal. You're not arguing what the judge ruled. I don't think. That is, you must stay here unless you're saying they don't qualify entirely to stay in a limited basis to adjust this debt because the state has its own plan. Now, what's your law that we say, oops, you can't do that limited automatic stay retention because the state law trumps it. What's your law on that? Well, the specific law that says the state law trumps it. Something. How do I write this opinion that says the state law that has a payment plan is going to trump the limited automatic stay left in place by the district court? That's precisely what the bankruptcy. I'm sorry, precisely what the Supreme Court has said at Beacons. The state law does, in fact, trump federal for that limited purpose in terms of operating the states and what the states may or may not do and any kind of plan that can be confirmed has to comply with state law. That's the magic words, has to comply with state law. We don't know what the plan yet is because it hasn't been devised yet, and it may comply with state law. When you say they're operating in good faith and they cannot comply with the bankruptcy law, that's a dismiss issue, I think. So I still have not heard anything that says if we're in a limited automatic stay for purposes of getting rid of your liquidated debt, that what we're going to do in the limited purpose doesn't comply with state law. Isn't the cart before the horse here? I don't think so. I really don't. We asked for it. Well, you don't think so, but tell me why. I mean, I don't want to keep going around in circles, and maybe I'm wrong. I just don't quite understand how we can get there until we find out that what we're doing in 9 violates state law or 9 can never apply. Well, we make a couple of arguments on the bad faith issue. The bad faith, I think, is a dismiss issue. It is also a relief from the stay issue, as I understand it. And it was asked that it was a relief that we requested in the relief from the stay. It's the third point in our brief. And our point is really that you don't really reach all the complex questions. Well, let's get where Judge Nelson was. The district judge said there was no bad faith. If we get to that point now, what do we do? Right. I think obviously you have to review that de novo. No, that's fine. We've gone beyond that. So if it's not bad faith, then what? I'm not saying we've decided. Okay. Assuming that it's not bad faith, then we raise, I think, two more points. One is that we don't find a source of power for the bankruptcy court to forestall the imposition, really, of remedial measures by a district or a circuit court in terms of the civil rights issue. And then we also argue the B-4 exemption, which is that even though it wouldn't help us. You're going back to the civil rights issue. This is a dollar, $3 million. It has nothing to do with civil rights whatsoever. It's a judgment collection, execution on the judgment. The civil rights under the action has nothing to do with the $3 million because it's been reduced to a money judgment. It's not a civil rights case that we're trying in the bankruptcy court. It's a $3 million execution. Well, the B-4 issue relates to the injunction part of it. I understand the injunction part, yeah. Right. And then the other part, we contend that there's no source of power for the bankruptcy judge to forestall the city's compliance with that. Okay. Law. With the State law. That's our contention. I think I've used up all my time, actually. Thank you. Thank you. Good morning, and may it please the Court. I'm Jim Johnston. I represent the City of Desert Hot Springs. Counsel, how did I fall off the wagon here? I don't quite understand his argument. Do we have a plan or a proposal in this bankruptcy that violates State law? And if not, do we have to wait to determine whether whatever's going to happen in the bankruptcy that it violates State law before we can determine whether Chapter 9 applies? Or does Chapter 9 never apply when the State says here's the way you pay off a judgment? Well, Your Honor, you hit the nail on the head both on that point and on your earlier point in terms of what are we doing here today. The appellants are arguing a different appeal. This is the limited appeal, as I understand it, on the residual of the lift stay, which is the automatic stay related to remedies and not to the fact that they can go out and civilly reduce it to judgment. That's absolutely right. And, in fact, the appellants have already been to this Court on their motion to dismiss the bankruptcy case. In terms of their motion for relief from stay, they got 99 percent of the relief that they requested. They got the relief that any unsecured creditor in a bankruptcy case could ever hope to get, and that's the right to go and liquidate their claims to the point of judgment, but to come back to the bankruptcy case and have those claims treated with the other creditors of the city, and there are plenty of other creditors of the city, in accordance with the priorities of the Bankruptcy Code. And that is something that's going to be determined later on down the road. I wanted to note, going to the point that you opened up with me about the state payment laws, a couple things. First, this argument was never made to the Bankruptcy Court in the motion for relief from stay. You can go back in there. The argument wasn't even made. And the reason the argument wasn't made is, I think, a couplefold. First, it's highly premature. Any argument about what the appellants are or are not entitled to get in a bankruptcy case are going to be sorted out by the Bankruptcy Court in the context of confirmation of the city's plan, and that's down the road. In order to confirm a plan for the city, the Bankruptcy Court's going to have to confront these arguments that state law requires their claims to be paid in full, and the court's going to have to find the plans in the best interest of creditors. Our counsel argues that the Supreme Court says that the Bankruptcy Court cannot violate state law. So how do we do that analysis as we go through this? And where is the state law going to be decided, in the Bankruptcy Court or the state court? I would respectfully suggest that the state law will be decided in the Bankruptcy Court. What the appellants don't tell the court is that, in fact, all of the federal bankruptcy decisions are contrary to their argument. As you might expect, even though Chapter 9 cases don't come up all that often, this argument is confronted by or made by creditors in cases. They say state law says we have to be paid in full, so you have to pay us in full. And to a decision unanimously, the Bankruptcy Courts and some higher courts say that's not true. And these aren't in our briefs because this isn't what we were talking about in this appeal, but I'll give you some citations.  Excuse me. They're not in the brief. The California cases? There are two California cases that address the issue and several others that address the issue in the context of state full payment laws in other states. I would suggest that it's completely analogous. The underlying rationale for the cases is that in order to get into Chapter 9, a state has to specifically authorize its municipalities to file for bankruptcy. That's unique in the Bankruptcy Code. There doesn't have to be this state authorization in a Chapter 7, in a Chapter 11, in a Chapter 13. But to address the Tenth Amendment concerns, Congress recognized that the state has to basically empower its municipalities to go in. And the state of California clearly has done that here. I'll give you the citation. It's California Government Code Section 43739 and 53760. That's well established that those are the authorizing statutes that let California municipalities go in. What can you get out of bankruptcy? Can you get out paying pennies on the dollar? That's to be determined right now. What we think we can get out of bankruptcy is putting forth the maximum possible revenues to solve the problem that the city's in. The problem that the city's in right now is the judgment that, you know, with interest they assert $4.5 million. They assert another $4.5 million in attorney's fees. It's upwards of $9 million, $10 million, which far exceeds the city's annual general fund revenues. So the city certainly can't pay that all at one time. The city's got about $2 million in other debt. We're going to put our best foot forward and put as much as we can to pay creditors, either in a lump sum or over time. The city actually, since the bankruptcy case has been filed, and this is all, again, well beyond the record, but the city's gone to its voters. It's asked its voters to raise the utility users tax for five years. They had one that was sunsetting in 2005. The voters remarkably agreed by a two-thirds margin. It's a special tax, and so there's going to be tax revenues coming in, 50% of which are allocated by law to pay creditor claims under a plan. But this will all be sorted out in the bankruptcy case. Exactly. And the appellants certainly are going to make the argument that we're different, we're toward creditors. State law requires that we be paid in full, and we'd be paid in full now. We don't think the law provides for that. We don't think that the bankruptcy code lets them be singled out for that purpose. So that's for Judge Nozzol to decide in the bankruptcy case. One side issue, because it may be important at this point, the city has never authorized the construction of that trailer park, correct? I don't know what has happened in the 13 years since. I believe that once the denial of the funding occurred, the state program that was going to authorize the funding kind of blast, so it's not something that can be cured now. So the deal, as it turned out, went into disrepair because you couldn't get financing, so now we're in a deal where we're going to pay damages because of the violation of the Fair Housing Act as decided by this court on the last appeal. That's where we are now. And the trailer park, that's forgotten because it's never going to happen. That's as I understand the facts. That's correct. And the city's faced with an enormous judgment, relatively speaking, in the context of the city's finances. If you'd like, I'd be very happy to address kind of the merits of the bad faith argument because I think what you heard this morning bears very little relationship to what actually happened in this case and to the reasons why the city's in the bankruptcy case. Can you help me also? Tell me why we're here on appeal and whether bad faith was decided, but when we take that narrow portion of the relief from stay that was not granted, how do we address that and what are the issues relative to that narrow issue? Gladly. As you noted, we are here on an order that granted the appellant's motion for relief from stay to let them finish all their litigation in the district court. That litigation is going forward. The only proviso was that once you liquidate your claim, once you get your judgment, once it's fixed, once the district court says here's your attorney's fees, here's your interest, then that's your claim in the bankruptcy case. You have to go back to the bankruptcy case. As I noted, that's what happens in every bankruptcy case where there's unliquidated claims and a creditor seeks a relief from the stay. There certainly was no abuse of discretion by the bankruptcy court in granting that relief but not vacating the automatic stay. As we pointed out in our briefs, what the appellants were trying to do was say, okay, we lost our motion to dismiss the case, which, by the way, the findings and conclusions came out two weeks before the appellants filed their motion for relief from stay. They said, we lost that one. Let's try a different tack to get the exact same relief that we were seeking. Let's ask the bankruptcy court to just vacate the stay. It's exceedingly common for bankruptcy courts to do what Judge Nagle did here, to let claims be liquidated. I'd suggest that it's exceedingly rare or if almost unheard of for an insecure creditor for a bankruptcy court to completely vacate the stay to let a creditor liquidate its claim and then go ahead and enforce that claim outside of the bankruptcy process. This is because if you were to vacate the stay, it lets the creditors avoid bankruptcy's common form. It would let a particular creditor take priority over all other creditors who may be similarly situated. That's not what the bankruptcy is about. There was some argument in the briefs and below about, well, this is a civil rights claim, and so the rules are different. We cited a number of cases at page 16 of our brief that make it clear that the issues, this rule hasn't changed just because the claimant's against the debtor is asserting a civil rights claim. Many times, creditors will get relief from the stay to go liquidate their claims, to go liquidate their civil rights claims, but not to enforce them. You have to come back to the bankruptcy court to do that. Now, your opponent says that the bankruptcy court could not stay the second part of the claim, which is the remedial direction to the city to go forth and try and straighten up your act so this doesn't happen again. Since that's not a money question exactly, why would the bankruptcy stay power operate to that part of the judgment? The bankruptcy court didn't stay that. I think it's important to note that despite some of the language in the briefs, the bankruptcy court did not issue an injunction. The bankruptcy court took the statutory stay and said, I modify it to let you go forward. He didn't say, you know, I enjoin the district court, I enjoin the circuit. You can't do this, you can't do that. That's not what happened. Judge Nagel did hold in the course of ruling on the motion that the stay would apply to remedial relief that might have some, I think he used the word, budgetary impact. He also noted that the stay did not apply to anything that was purely non-monetary injunctive relief that the district court might order. And I can refer the court to our excerpts of record, our supplemental excerpts of record at page 20, which was the hearing on the form of the order where we had to go back to the bankruptcy court to haggle over the form of the order that's ultimately on appeal now, where the bankruptcy court made clear that the order did not apply to injunctive directions. All that he held was that if an order was entered by the district court in the future that resulted in a claim against the city and thus was subject to the automatic stay, that they had to come back. And he also noted that if there was an injunctive relief order, he'd resolve any dispute about the stay in a very shortened time. And that's in that transcript at our excerpt of record 20. Going to some of the merits of the bad faith argument, if the panel is interested in hearing them, I think the most important thing is you have to step back and assess the circumstances in which the city found itself before it filed the bankruptcy case. All of these circumstances, by the way, are set forth in detailed findings of fact by the bankruptcy court, not in the context of this order, but in the context of the order that was entered a few weeks earlier on the appellant's motion to dismiss the stay. There is a copy in the excerpts of record starting on page 203. The first important point is that although there had been a $3 million judgment entered in favor of the appellants in 1994, the district court threw that judgment out and ordered a new trial, and the new trial resulted in a damage award of a dollar. From the city's perspective, that really was the end of the story until mid-2001, when this court reversed Chief Judge Marshall's new trial order and ordered that the original jury awarded to be reinstated. That was six years after the fact. Upon that reversal, the appellants made a demand that the city immediately pay them over $8 million, and that was the amount that they claimed was due for the judgment, the accrued interest, and the attorney's fees. If you look at the excerpts of record at page 209 in the bankruptcy court's findings, they detail some of the correspondence and some of the demands that the appellants made of the city. They said there was a letter on November 12, 2001, where it said, The city's obligation is to pay the judgment with interest in full now, underlying. If you do not immediately advise me that your client is making arrangements to do so upon an imminent basis, then we will commence the collection process. There was another letter to that effect a few days later, where it says, We must hear from you by the close of business Friday, December 7, as to the city's willingness to immediately pay this judgment. If we do not, we will be forced to initiate further collection actions at the city's expense via motion or legal process. So the city, understandably, had some fear that the appellants were going to go attach their bank accounts and basically shut down the city, and the fear had an important historical context, because after the first jury verdict was entered, after the first judgment came down before the new trial order, the appellants did just that. They went and they levied on the city's bank account. They froze the city's ability to write a payroll check, to write any kind of checks. That writ of attachment was ultimately quashed by the district court, but it was with that in the back of the city's mind that they were petrified, frankly, that the appellants were going to shut down the operation of the city. Faced with that, the city believed that it really had no choice but to go ahead and file a bankruptcy case, and that's what the city did in December of 2001. It was not a bad faith act. As the bankruptcy court specifically found later on, it was good faith. The bankruptcy court found that the city had filed the bankruptcy case with a good faith desire to implement a reorganization plan while preventing a piecemeal dismantling of its assets and still continuing to provide essential services to its residents. The bankruptcy court did not clearly err in finding this. I would submit that the case law actually is pretty uniform, that this is a valid purpose for a debtor to file a bankruptcy case, even a Chapter 9 debtor. In fact, on the appeal of the motion to dismantle the bank. What's the valid purpose? Stay in collection of a judgment. Okay, they say that the mayor said the purpose was to get out from paying the entirety of the judgment. They're quoting a website from the mayor. I don't know what was going on in the mayor's head, and I don't think that if you read the excerpt of what the mayor actually said on that website that it's being accurately represented. Well, what did he say? Frankly, Your Honor, I don't know. Well, he says he said we want to pay pennies on the dollar. I believe there's a passage in there which says that given the resources that the city has available to it, the city is going to propose a plan that pays its creditors $0.10 to $0.20 on the dollar, and that's creditors plural, including SilverSage and everybody else. Fortunately, circumstances have progressed to a stage where recoveries from creditors, in this case, are going to be a lot better. We have the tax that was passed, and we also have the other matter that's on calendar today, which is the PERMA insurance issue. It could very well be that SilverSage gets paid in full by the city's insurer, and then all of this is a completely non-issue, which explains, again, the premature nature of the appellant's arguments. I did want to refer the Court, though, to Judge Hall's prior opinion just a few months ago in this case, where she wrote that Congress has restructured the Bankruptcy Act several times and has never sought to restrain cities from using bankruptcy as a tool to restructure debt incurred by civil rights judgments. That's just the fact. The entry of a large judgment is a common reason why municipalities are forced into Chapter 9 cases. There's a case called Chihuly School District, reported at 145BR981 out of Missouri, where the Court refused to dismiss a Chapter 9 case filed in response to a large adverse judgment. The Court held that, and I'll quote, very few judgment debtors want to pay judgment creditors, but the fact that the school board chose to avail itself of a legal remedy afforded to it by federal law is not proof of bad faith. I think that's right on the money here. There's a case called City of Wellston out of the Bankruptcy Court from the Eastern District of Missouri, reported at 43BR348. Again, the Court refused specifically to dismiss the Chapter 9 case after the city had filed bankruptcy in response to a writ of attachment served by judgment creditors. That's what was going on here. I see that my time is running short. I'd be happy to answer any other concerns that the panel might have. Thank you. I don't guess none. Okay. Thank you, Your Honor. I did want to point out, I noted in the last matter on the calendar today, which is the permanent insurance issue, the panel selected to treat the city as an amicus. I did want to make myself available if anything comes up in that argument. If you have a question of the city, I'm here to prepare that. All right. Thank you. Thank you. You used your time, but since we had extended you a little bit with questions, we'll give you a minute in rebuttal. Two things, the two cases, the two Missouri cases, although I'm a member of the Missouri Bar, I do not know whether Missouri has a statute that says you have to pay judgments or not. I just don't know the answer to that, but there's no discussion of that in the case. As to what is appropriate to review now, I would note that the last time we were before the circuit here was 27th, 3rd, 930. The judges there did not take up the 109C3 preconditions to filing bankruptcy, which for the reason that they decided that that could, in fact, be reviewed, rather, at a relief from the state because they were aware of this appeal. And there's language at, I'm trying to find a pinpoint, but anyway, it's 930, I believe, that actually discusses that, that these issues can be reached at this particular proceeding. That was in our last decision, right? Yeah, I read that. And the problem is, is if you don't, that means that essentially the 109C3 requirements are not really requirements. They're just guidelines because obviously you're not going to be able to decide whether it was appropriate and whether the negotiations were appropriate, whether they were really financially insolvent within the meaning of the statute, and so forth, after plan confirmation, and so forth. And I would note that we've already been in this bankruptcy for two years, which is on top of the 10 or 11 years we were in the district court. All right, thank you. The case to be started will be submitted.
judges: Brunetti, T.G. Nelson, Silverman